**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| 63rd & Morgan Currency Exchange, Inc.<br><br>　　　Plaintiff,<br><br>v.<br><br>Citibank, N.A.,<br><br>　　　Defendant. | Case No. 23 C 5048<br><br>Hon. LaShonda A. Hunt |

### MEMORANDUM OPINION AND ORDER

Plaintiff 63rd & Morgan Currency Exchange, Inc. ("Plaintiff") initially sued Defendant Citibank, N.A. ("Citibank") in state court, to recover money lost when a Citibank customer cashed the same check twice, first via remote deposit at Citibank and then in person with Plaintiff. Because Plaintiff sought indemnification under Federal Regulation CC, which implements the Check Clearing for the 21st Century Act, 12 U.S.C. §§ 5001-5018 ("Check 21 Act"), Citibank removed this action to federal court based on federal question jurisdiction. Currently before the Court is Citibank's motion to dismiss Plaintiff's complaint for lack of standing and for failure to state a claim. For the following reasons, Citibank's motion [12] is granted.

### BACKGROUND

The facts are undisputed. Plaintiff is a licensed Illinois community currency exchange that, among other things, cashes checks in exchange for a fee. (Compl. ¶ 1, Dkt. 1-1). Citibank is a duly registered financial institution. (*Id.* ¶ 2). On April 21, 2023, the Treasurer of the State of Illinois issued a check to Kendra Williams ("Williams") for $599. (*Id.* ¶ 4). Sometime between April 21 and April 26, 2023, Williams used a mobile device to deposit the check at Citibank by way of remote deposit capture, and in return, received a cash deposit into her Citibank account. (*Id.* ¶¶ 4,

1

9). Remote deposit capture allows a bank customer to send an electronic image of the check to the bank, rather than depositing the physical check at the bank. (*Id.* ¶ 9). On April 26, 2023, Williams presented the same check that she had deposited remotely at Citibank to Plaintiff in person and received cash in exchange. (*Id.* ¶ 4). Thereafter, Plaintiff deposited the check into its bank account at Republic Bank of Chicago ("Republic"). (*Id.* ¶ 5).

Around May 1, 2023, Republic informed Plaintiff that the State of Illinois had dishonored the check because it had already been presented by another banking institution, honored, and paid. (*Id.* ¶ 6). The Federal Reserve subtracted $599 from Republic's account to cover the dishonored check. (*Id.* ¶ 7). Plaintiff reimbursed Republic for this loss. (*Id.* ¶ 8). Republic sent a facsimile to Citibank requesting reimbursement under Regulation CC, but Citibank did not remit payment. (*Id.* ¶ 15). Plaintiff also sent a letter to Citibank requesting reimbursement as a subrogee to Republic's indemnity claim. (*Id.* ¶ 16). When Citibank did not comply, Plaintiff filed suit in the Circuit Court of Cook County, Illinois. (*Id.* ¶ 17; Dkt. 1-1). Citibank removed this action to federal court and now contends that Plaintiff's complaint must be dismissed with prejudice. (Dkt. 12).

## LEGAL STANDARD

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). This Court must "accept all well-pleaded facts as true and draw all reasonable inferences in the plaintiff's favor." *White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021). While a complaint need not include "detailed factual allegations," a plaintiff must provide more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Furthermore, Rule 8 requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must demonstrate that a claim

is plausible on its face, meaning that the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility requires more than a "sheer possibility," but does not rise to the level of probability. *Id.*

Under Rule 12(b)(1), a complaint may also be dismissed for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). This includes a lack of standing. *See Taylor v. McCament*, 875 F.3d 849, 853 (7th Cir. 2017). "Standing is a threshold question in every federal case because if the litigants do not have standing to raise their claims the court is without authority to consider the merits of the action." *Freedom From Religion Found., Inc. v. Zielke*, 845 F.2d 1463, 1467 (7th Cir. 1988). "The standing inquiry focuses on whether the plaintiff is the proper party to bring [] suit." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). To establish standing, a plaintiff must prove three elements: (1) injury in fact, (2) causal connection between the injury and the conduct forming the basis of the complaint, and (3) redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). *See also Flynn v. FCA US LLC*, 39 F.4th 946, 952 (7th Cir. 2022) (plaintiff must establish standing "in the same way as any other matter on which he bears the burden of proof"). A standing challenge may be facial—accepting all well-pleaded allegations as true, plaintiff still lacks standing—or factual—requiring plaintiff to move beyond mere allegations and put forth actual evidence to support standing. *Id.*

## DISCUSSION

In 2003, Congress passed the Check 21 Act to "facilitate check truncation by authorizing substitute checks," "foster innovation in the check collection system without mandating receipt of checks in electronic form," and "improve the overall efficiency of the Nation's payments system." 12 U.S.C. § 5001(b)(1)-(3). *See also Speedy Check Cashers, Inc. v. U.S. Postal Serv.*, 286

3

F.Supp.3d 934, 937 (N.D. Ill. Dec. 12, 2017) (discussing purpose of Check 21 Act). The Check 21 Act permits physical checks to be deposited remotely rather than in person, which saves money and allows customers to receive funds quicker. The remote deposit of checks can result in the creation of a substitute check, which the Check 21 Act defines as:

> a paper reproduction of the original check that contains an image of the front and back of the original check; bears a MICR line containing all the information appearing on the MICR line of the original check, except as provided under generally applicable industry standards for substitute checks to facilitate the process of substitute checks; conforms, in paper stock, dimension, and otherwise, with generally applicable industry standards for substitute checks; and is suitable for automated processing in the same manner as the original check.

12 U.S.C. § 5002(16).

When a bank processes a substitute check or accepts a remote deposit, certain warranties may apply under the Check 21 Act. At issue in this case is the subsection titled "Remote deposit capture indemnity" in Regulation CC, stating that:

> (1) The indemnity described in paragraph (f)(2) of this section is provided by a depositary bank that—
>
> (i) Is a truncating bank under § 229.2(eee)(2) because it accepts deposit of an electronic image or other electronic information related to an original check;
>
> (ii) Does not receive the original check;
>
> (iii) Receives settlement or other consideration for an electronic check or substitute check related to the original check; and
>
> (iv) Does not receive a return of the check unpaid.
>
> (2) A bank described in paragraph (f)(1) of this section shall indemnify, as set forth in § 229.34(i), a depositary bank that accepts the original check for deposit for losses incurred by that depositary bank if the loss is due to the check having already been paid.
>
> (3) A depositary bank may not make an indemnity claim under paragraph (f)(2) of this section if the original check it accepted for

>> deposit bore a restrictive indorsement inconsistent with the means of deposit.

12 C.F.R. § 229.34(f).

Plaintiff's theory of liability against Citibank rests on two assumptions: (1) Republic, the depositary bank that later accepted Plaintiff's deposit of the original check from Williams, is entitled to indemnification by Citibank, the depositary bank that first accepted Williams' deposit of an electronic image of the same check; and (2) Plaintiff is subrogated to Republic's indemnity rights against Citibank under 12 C.F.R. § 229.34(f). Citibank challenges both contentions and argues for dismissal of Plaintiff's complaint because: (1) Plaintiff lacks standing to assert a claim for indemnity under 12 C.F.R. § 229.34(f) because Plaintiff is not a depositary bank; (2) Plaintiff cannot demonstrate that it is subrogated to Republic's alleged indemnity rights against Citibank; (3) Citibank made no warranties to Plaintiff; (4) breach of warranty claims under the Check 21 Act are not assignable; and (5) Plaintiff cannot demonstrate that Republic suffered a loss in this transaction. (Def. Mem. at 4-11, Dkt. 13). The Court addresses each argument below.

## I. Standing

The regulation on remote deposit capture indemnity provides for indemnification between two depositary banks. 12 C.F.R. § 229.34(f)(1)-(2) ("(1) The indemnity described in paragraph (f)(2) of this section is provided by a **depositary bank** that . . . . (2) A bank described in paragraph (f)(1) of this section shall indemnify, . . . a **depositary bank** . . . .") (emphasis added). Both Citibank and Plaintiff acknowledge that while Republic is a depositary bank, Plaintiff is not. Nevertheless, Plaintiff argues that it steps into the shoes of Republic and its status as a depositary bank and therefore has standing to proceed with an indemnity claim against Citibank. (Pl. Resp. at 4-5, Dkt. 15). Thus, the Court considers whether Plaintiff has plausibly alleged grounds for subrogation.

5

A plaintiff is generally required to assert its own legal rights rather than the legal rights of a third party. *Freedom*, 845 F.2d at 1468; *see also* Fed. R. Civ. P. 17(a)(1) (party bringing a claim must be the "real party in interest."). Traditionally employed in the context of insurance, subrogation is "[t]he substitution of one person in the place of another with reference to a lawful claim . . . so that he who is substituted succeeds to the rights of the other in relation to the . . . claim, and its rights, remedies, or securities." *Emps. Ins. of Wausau v. James McHugh Constr. Co.*, 144 F.3d 1097, 1105 (7th Cir. 1998) (*citing* Black's Law Dictionary 1427 (6th ed. 1990)). "The general rule in federal court is that if an insurer has paid the entire claim of its insured, the insurer is the real party in interest under Federal Rule of Civil Procedure 17(a) and must sue in its own name." *Krueger v. Cartwright*, 996 F.2d 928, 931 (7th Cir. 1993). In their briefs, the parties address both contractual and equitable subrogation.

### A. Contractual Subrogation

Subrogation is usually imposed by contract. *Wilder Corp. of Del. v. Thompson Drainage & Levee Dist.*, 658 F.3d 802, 807 (7th Cir. 2011). Here, Plaintiff alleges a "contractual agreement between Plaintiff and Republic requires Plaintiff to indemnify Republic for losses resulting from checks deposited into its account which are then dishonored." (Compl. ¶ 8, Dkt. 1-1). Indemnification and subrogation, however, are legally distinct concepts. As a Republic customer, Plaintiff may be obligated to cover checks deposited into its bank account and paid out by Republic that are later returned for insufficient funds. But that does not necessarily mean that Plaintiff is contractually *subrogated* to any indemnity rights Republic has under the Check 21 Act. Citibank is correct that Plaintiff does not identify a subrogation provision in any contract between Plaintiff and Republic, either in the Complaint or its response brief. Plaintiff did not even respond to this argument in its brief, which is perhaps a concession that no such agreement exists. (Pl. Resp. at 7-

6

9, Dkt. 15). The Court therefore finds that Plaintiff has not sufficiently alleged facts to support contractual subrogation.

### B. Equitable Subrogation

Equitable or "legal" subrogation arises by operation of law rather than contract. *Am. Nat'l Bank & Trust Co. of Chi. v. Weyerhaeuser Co.*, 692 F.2d 455, 460 (7th Cir. 1982). Nearly a century ago, the Seventh Circuit defined subrogation as "an equitable right accruing to one obligee as surety or otherwise to make payments, whereby, upon the making of the payments, the one so obligated succeeds to all of the rights of the person to whom he made the payment." *In re Freeman & Brooks*, 1 F.2d 430, 434 (7th Cir. 1924). By allowing these claims of subrogation, courts "sought to achieve substantial justice, by placing ultimate responsibility for the loss upon the one against whom in good conscience it ought to fall." *Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 610, 626 (7th Cir. 2001).

The Seventh Circuit has described equitable subrogation as a "troublesomely vague doctrine." *Wilder Corp. of Del.*, 658 F.3d at 807. The analysis is particularly fact and case dependent, and there are four requirements that must be satisfied: (1) the claim or debt at issue must have already been paid in full; (2) a third party is primarily liable for the claim or debt, either in law or equity; (3) there is a right that could be enforced against the third party; and (4) the party who paid the claim or debt did not act as a "volunteer" in doing so. *Am. Nat'l Bank*, 692 F.2d at 460-63. Although the parties do not identify or analyze these exact factors, their dispute appears to center around the middle elements. In other words, the question here is whether Republic has a right under Regulation CC that can be enforced against Citibank.

Citibank argues that Republic did not accept the **original check**, as required by 12 C.F.R. § 229.34(f)(2), and so Republic has no right to indemnification by Citibank for Plaintiff to pursue.

7

(Def. Mem. at 10, Dkt. 13). The plain meaning of the statute and the definition of "original check" as provided in 12 C.F.R. § 229.2(ww), according to Citibank, support such a finding. (*Id.* at 10-11). In response, Plaintiff asserts that Citibank's position implies that the indemnity provided by the Check 21 Act exists only when there is a direct payee to bank relationship, which cannot be the intent of the statute. Plaintiff further argues that Citibank became a truncating bank pursuant to the statute, 12 C.F.R. § 229.2(eee), and that the statute requires a truncating bank to indemnify a depositary bank. 12 C.F.R. § 229.34(f)(1)-(2). Citibank has the better argument.

When interpreting a statute, a court starts by looking at the statute's text. *U.S. Venture, Inc. v. U.S.*, 2 F.4th 1034, 1037 (7th Cir. 2021). "Where [] the statutory text supplies the definitional tools [needed] to answer the question presented, [the court's analysis] can stop. There is no need to resort to extrinsic definitions or methods of interpretation." *Id.* at 1041. Interpretation of a statute must not lead to absurd results. *See Zbaraz v. Madigan*, 572 F.3d 370, 386-87 (7th Cir. 2009). The result of statutory interpretation would be absurd if the interpretation "flies in the face of the statute's purpose." *Id.* at 387.

The regulation expressly provides that remote deposit capture indemnity is available to "a depositary bank that accepts the original check for deposit . . . ." 12 C.F.R. § 229.34(f)(2). An "original check" is defined as "the first paper check issued with respect to a particular payment transaction." 12 C.F.R. § 229.2(ww). In this case, the original check was issued by the State of Illinois to Williams. After she deposited remotely an electronic image of the check at Citibank and received a cash payment from Citibank, Williams then presented the original check to Plaintiff and received a cash payment from Plaintiff. As Plaintiff concedes, it "took **permanent custody** of the original check, **truncated it** and immediately thereafter deposited same into its bank account at Republic Bank of Chicago . . . ." (Compl. ¶ 5, Dkt. 1-1) (emphasis added). To truncate means "to

remove an original check from the forward collection or return process and send to a recipient, in lieu of such an original check, a substitute check or, by agreement with the recipient, information relating to the original check (including data taken from the MICR line of the original check or an electronic image of the original check), whether with or without the subsequent delivery of the original check." 12 C.F.R. § 229.2(ddd). The undisputed facts reflect that it was Plaintiff, not Republic, who accepted the original check from Williams within the meaning of the regulation. At most, Republic accepted a check for deposit from Plaintiff. That is not enough under the statute.

Plaintiff's argument that Citibank's interpretation of the statute "conflicts with the concept of truncation under Regulation CC" (Pl. Resp. at 8, Dkt. 15) misses the mark. Citibank's qualification as a truncating bank for purposes of 12 C.F.R. § 229.2(eee) means that it meets the definition of a potentially liable depositary bank under 12 C.F.R. § 229.34(f)(1). But the mere fact that Citibank truncated Williams' check has no bearing on whether Republic meets the definition of a depositary bank entitled to indemnification under 12 C.F.R. § 229.24(f)(2). By its terms, the statute expressly provides that only the depositary bank that accepted the original check for deposit qualifies for indemnity. As discussed, Plaintiff has not shown that to be the case here.

Contrary to Plaintiff's assertions, the word "accept" connotes something more than simply depositing a check from any payee. The existence of a customer relationship is critical, as banks generally do not owe any duty to non-customers. *See 1409 W. Diversity Corp. v. JPMorgan Chase Bank, N.A.*, No. 16 C 256, 2016 WL 4124293, at *1 (N.D. Ill. Aug. 3, 2016). Just as Citibank accepted a check from Williams—a Citibank customer—Republic accepted a check from Plaintiff—a Republic customer. In other words, the point is to protect banks who accept original checks for deposit from their customers. This intent is clear from the commentary by the Board of Governors of the Federal Reserve System:

9

> This indemnity provides for a depositary bank's potential liability when it permits a customer to deposit checks by remote deposit capture (i.e., to truncate checks and deposit an electronic image of the original check instead of the original check). Because the depositary bank's customer retains the original check, that customer might, intentionally or mistakenly, deposit the original check in another depositary bank. The depositary bank that accepts the original check, in turn, may make funds available to the customer before it learns that the check is being returned unpaid, and in some cases, may be unable to recover the funds from its customer.

Availability of Funds and Collection of Checks, 82 Fed. Reg. 27552-01, 27593, 2017 WL 2572714 (July 1, 2018) (to be codified at 12 C.F.R. pt. 229). Addressing a potential scenario akin to the present, the Board offered the following guidance where the customer used remote deposit capture service to deposit the same check into Bank A and Bank B and then deposited the original check into Bank C without a restrictive indorsement: "Bank B does not have an indemnity claim against Depositary Bank A because Depositary Bank B did not receive the original check for deposit." *Id.*

Indeed, interpreting the statutory provision as broadly as Plaintiff suggests would produce absurd results and frustrate the purpose of the Check 21 Act. Plaintiff is a licensed currency exchange that charges individuals a fee to cash their checks. Plaintiff then deposits those checks into its bank account to receive payment. This business model, giving immediate cash for checks, necessarily involves a higher risk of nonpayment with little to no recourse for entities like Plaintiff. In contrast, a bank that accepts checks for deposit from its own customers, has certain safeguards in place to mitigate losses, including the ability to put a hold on the check until it clears or to quickly reverse the transaction before the funds can be withdrawn. Allowing Plaintiff or any other check-cashing business to step into the shoes of its depositary bank through equitable subrogation and thereby obtain standing to sue other depositary banks to recover its business losses would impermissibly expand the reach of the statute. Accordingly, Plaintiff has not stated a claim for equitable subrogation.

## II. Warranties

As with remote deposits, the Check 21 Act establishes warranties relating to substitute checks. *See* 12 C.F.R. § 229.52(a)-(b). Citibank argues that it did not make any such warranties to Plaintiff on a "substitute check," as that term is defined by 12 U.S.C. § 5002(16), and so Plaintiff's complaint cannot state a claim. (Def. Mem. at 5-7, Dkt. 13). However, Plaintiff admits it is not seeking relief under section 229.52. (Pl. Resp. at 5, Dkt. 15) ("Plaintiff's claim is in no way premised upon an invocation of Defendant's warranty obligations under Section 229.52 because Plaintiff is not asserting rights relating to a substitute check created by Defendant when it permitted an electronic deposit of the Check."). Given this concession, the Court finds this point is moot.

## III. Assignability of Claims

Likewise, the Court can quickly dispose of the issue of assigning breach of warranty claims. Again, Plaintiff admits that it "does not claim to be an assignee from Republic." (Pl. Resp. at 7, Dkt. 15). There is no need then for further consideration of this argument, including the applicability of *Triffin v. Wachovia Bank, N.A.*, 968 A.2d 177 (N.J. Super. 2009), a case relied on by Citibank that involves only sections of the Check 21 Act addressing substitute checks.

## IV. Loss

Even if Plaintiff could assert an indemnity claim on Republic's behalf as subrogee, the Court agrees with Citibank that Republic did not suffer a loss. Republic was made whole when Plaintiff covered the amount of the dishonored check. Thus, the complaint does not allege a basis for Republic to seek indemnity. *See* Availability of Funds and Collection of Checks, 82 Fed. Reg. 27552-01, 27593, 2017 WL 2572714 (July 1, 2018) (to be codified at 12 C.F.R. pt. 229) (explaining that in a scenario where "the same customer who sent Depositary Bank A the electronic image of the check then deposits the original check in Depositary Bank B. . . . Depositary Bank B

may be unable to charge back funds from its customer's account. Depositary Bank B may make an indemnity claim against Depositary Bank A for the amount of the funds Depositary Bank B is unable to recover from its customer").

## CONCLUSION

For the reasons set forth above, Citibank's motion to dismiss [12] is granted. Plaintiff is granted leave to file an amended complaint consistent with this ruling by February 13, 2024. Otherwise, this case will be closed.

Dated: January 23, 2024

**ENTERED**:

LaShonda A. Hunt
United States District Judge